UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **PERSEVERANZA SPA DI NAVIGAZIONE, ET AL** | **CIVIL ACTION NO: 08-2595 C/W 09-3297** |
| Versus | |
| **YASA GOLDEN MARMARA, ET AL** | **SECTION "B"(5)** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Partial Summary Judgment (Rec. Doc. No. 33). Plaintiffs filed and opposition (Rec. Doc. No. 37). Defendants additionally filed a reply memorandum (Rec. Doc. No. 47). For the following reasons Defendants' Motion for Partial Summary Judgment is **DENIED.**

## BACKGROUND

On April 14, 2008, PRICELESS arrived at the mouth of the Mississippi River at the Southwest Pass from the port of Zueitina, Libya where she had loaded crude oil. After conducting a lightering operation in the Gulf of Mexico with another vessel on April 15, the PRICELESS entered the Mississippi river on April 16, 2008.

On April 17, 2008 the ship proceeded upriver, under orders from her charterer, to AMA Anchorage above New Orleans, to await berth availability at International Matex Marine Terminals in St.

1

Rose.  PRICELESS shifted into discharge berth in the early morning of April 19, 2008, and completed a partial discharge at 0200 on April 20, 2008.  She then departed that area and arrived that same morning at the Twelve Mile Point Anchorage below New Orleans, to await orders for discharge of her remaining cargo.

The PRICELESS' trip downriver from St. Rose to "Lower Twelve" was uneventful.  On the early morning of April 23, 2008, the PRICELESS was still lying at anchor, awaiting orders from her charterers. At 1415 (2:15 p.m.), the second officer on watch observed that the CIELO DI ROMA, anchored downstream and on the port quarts of PRICELESS, appeared to be moving riverward and forward, against the current, and closing on PRICELESS' stern.  He immediately brought the situation to the attention of the master and chief officer.  The master tried to hail the CIELO DI ROMA using VHF and channel 16 without any response.  The duty engineer was ordered to prepare for an emergency running of the main engine and the Master ordered the Bosun and the anchor party to proceed to the forecastle and "stand by the anchors."  At 1419 (2:19 p.m.), the Master ordered "dead slow ahead", followed by "slow ahead" on the main engine and the PRICELESS began to move upriver to avoid getting hit. But a minute later, at 1420 (2:20 p.m.), the CIELO DI ROMA nevertheless struck the transom of PRICELESS, indenting it, after which stop engine on PRICELESS was ordered. The Master then informed owners and his agents regarding the collision as well as

the classification society, Det Norske Veritas ("DNV") and the Coast Guard. Surveyors representing DNV and the other two ships later boarded the vessel. Before the collision, a sequence of digital color photographs showing CIELO closing in and about to collide with PRICELESS, were taken by her master and chief officer. At 12:30 a.m. on the early morning of April 24th, the PRICELESS was cleared to sail by the Coast Guard and tendered her notice of readiness. A pilot was ordered, who boarded the vessel at 0354; however, since there were no tugs available (due to the high water demand for tugs) to turn the vessel for sea, the pilot informed the master that he would not be able to get the ship underway. During the 0400-0800 watch, while the pilot was still onboard, Chief Officer Victor Fedorov observed that the CIELO DI ROMA was again closing the PRICELESS.

He and the master attempted to hail the CIELO on VHF-FM Channel 16, with no response.7 They asked their pilot if he would move the PRICELESS, but he informed them that it would not be possible to re-anchor her without tug assistance, and the pilot disembarked.8 At 0833, the PRICELESS bridge watch observed that CIELO appeared to be heaving her anchors, and that vessel was again closing on the PRICELESS. The master and engine room were informed and the anchor party sent to the forecastle to stand by to heave up the anchors.
The CIELO DI ROMA approached the PRICELESS to a distance of only

five (5) meters from her stern and closing, according to the deck log. In an emergency attempt to avoid a second allision, the master of the PRICELESS ordered slow ahead on the main engine and ordered the Bosun to commence heaving in the anchors. At 0837, with the chain having been partially heaved on the port windlass, the ship's bow suddenly swung to starboard, causing the port chain to become taut. Because of shock-loading from the anchor chain, the port anchor windlass sustained damage and the anchor chain could not be heaved in any further.

The DNV class surveyor returned later that day in order to inspect the damage to the windlass. DNV, in company with the chief engineer, noted that the port anchor windlass had encountered the following alleged damages:

1. The windlass drive shaft was bent;
2. Drive shaft coupling claws found damaged;
3. Hold down bolts for the pedestal bearing were sheared off;
4. One of the split bearings from the driveshaft noted to be partly damaged;
5. Anchor chain stopper partly damaged;
6. Anchor stopper for cable sling support noted to be uprooted; and
7. Anchor chain cable foundation – flange noted to be partly bent.

Vessel agents, on behalf of owners, engaged a derrick barge to pick up the port anchor and chain cable, which was finally

4

accomplished on April 26th, because of delays caused by lack of tugs. The damaged windlass was transported to Houston to a machine shop for repairs and eventually reinstalled on the vessel in the Bahamas.

## **LAW AND ANALYSIS**

### A. Standard of Review for Summary Judgment

Summary judgment is available if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56. The moving party has an initial burden of demonstrating the absence of a genuine issue of material fact. *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 638 F.Supp.2d 692, 696 (E.D. La. 2009); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is improper if a disputed material fact exists, which is defined as a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party establishes that insufficient evidence is within the record to support an essential element of the opposing party's claim, the burden shifts to the non-moving party. 638 F. Supp.2d at 693-94. The non-movant must then demonstrate that an issue of fact does exist, by identifying specific facts on

the record or by submitting additional evidence. *Id.* at 694. Summary judgment is appropriate if "no reasonable trier of fact could find for the nonmoving party." *Id.* at 693.

The Motion for Partial Summary Judgment is based on two notions. First, Defendants asserts that the damage to the windlass could not have been caused by the fault of the CIELO DI ROMA, or YASA GOLDEN MARMARA for that matter; and second that the windlass was in poor condition to start with, and the failure of the windlass was a result of normal use.

Defendants argue that PRICELESS windlass damage was caused by her crew and owners' negligent failure to maintain the windlass to withstand normal heaving. Defendants maintain that surveyors for PRICELESS, CIELO DI ROMA and YASA GOLDEN MARMARA all noted the poor material condition of the windlass-bad bolts, bad gears. Defendants rely on the survey report and declaration of Mr. Jason Fernandez. Mr. Fernandes describes the condition of the windlass as poor. For example, Mr. Fernandes noted that "during our inspection, two bolts from the bearing caps were available one of which was 'necked' with reduction of diameter approaching 50%, a severe and dangerous deterioration in condition which would have certainly contributed to the cause of damage as alleged.

Next, Mr. Fernandes points out a bearing bush that was "worn unevenly and of unequal thickness" he further noted that two "locator pins, which had been damaged a long time ago and were

6

ineffectual" were "old and pre-dated the alleged incident." Mr. Fernandes went on to conclude that "our inspection reveals that the damage to the windlass of the PRICELESS occurred due to poor condition and insufficient maintenance of the windlass, which was in too poor of a condition to withstand the strain imposed when attempting to raise the vessel's buried anchor." *See* Exhibit G. Defendants maintain that the windlass damage is the result of poor maintenance and such poor condition that the windlass could not withstand the normal strain of lifting its anchor in high current conditions.

Plaintiffs argue that Mr. Fernandes, who attended aboard the PRICELESS on behalf of CIELO DI ROMA interests, viewed the damaged windlass only after the incident at issue. Additionally, Plaintiffs claim that Mr. Fernandes' opinion that the damage to the port anchor windlass preexisted the events relevant herein, is directly contradicted by the sworn declaration and photographs of Mr. Michael Klaitzis, the superintendent engineer for the M/T PRICELESS at the time of the collision. *See* Exhibit F. For example, Mr. Kalaitzis photographed on or about March 10, 2008 both anchor windlasses aboard the PRCELESS and took a number of photographs confirming that the windlasses, bearing caps, and bushings were in good condition and well lubricated. Mr. Kalaitzis on or about March 31, 2008 inspected and found both the port and

the starboard windlasses well lubricated and maintained.

Additionally, Plaintiffs also argue that Mr. Fernandes' testimony is contradicted by the survey report of the vessel's hull underwriters. *See* Exhibit G. Mr. John Edmonds of BMT Marine and Offshore Surveys Ltd. who attended aboard the PRICELESS on behalf of hull underwriters noted that the damage to the windlass was directly related to the impact by CIELO on April 23, 2008, and the consequent need of the PRICELESS to attempt to maneuver out and away from the approaching CIELO DI ROMA on April 24, 2008. *See* Exhibit G.

The BMT survey report and the sworn declaration of Mr. Kalatzis, create genuine issues of material fact regarding the condition of the PRICELESS' port anchor windlass at the time of the allision and subsequent near allision, precluding CIELDO DI ROMA's Motion for Partial Summary Judgment. Accordingly,

The Court finds that genuine issues of material fact remain regarding the pre-casualty conditions of the PRICELESS' port windlass and the effect of the incidents of April 23-24, 2008 on the windlass. Further discovery may help to resolve facts in dispute, leading to reconsiderations here.

**IT IS ORDERED** that the Motion for Partial Summary Judgment filed by CIELO DI ROMA is **DENIED**.

New Orleans, Louisiana this 19th day of August, 2010.

United States District Judge